Aquilla WRIGHT, Plaintiff-Respondent,

v.

NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, a Corporation, and Ethel N. Abbott, Defendants,

Ethel N. Abbott, Defendant-Appellant.

No. 33132.

St. Louis Court of Appeals.

Missouri.

May 20, 1969.

Arthur Kreisman, St. Louis, for appellant.

Murphy, Roche & Schlapprizzi, Donald L. Schlapprizzi, St. Louis, for respondent.

CLEMENS, Commissioner.

While the plaintiff, Mrs. Aquilla Wright, was in the process of getting fire insurance, her house burned down. She sued the prospective insurer and her broker. Sitting without a jury the trial court found for the insurance company but gave plaintiff a $4,000 judgment against the broker, Mrs. Ethel N. Abbott. Only the broker appeals.

The trial court failed to explain the grounds of its judgment. The petition sounds in contract, stating:

"* * * on and before March 27, 1961, the defendants for a premium paid by plaintiff agreed to insure plaintiff's property known and numbered as 4349 Maffitt in the City of St. Louis, State of Missouri, against loss by fire, said coverage being in an amount not to exceed Four Thousand Dollars ($4,000.00).

"That thereafter on or about April 2, 1961, while the said contract of insurance was in full force and effect, plaintiff's property was damaged by fire in the sum of Four Thousand Dollars ($4,000.00), that proper and timely notice was given defendants by plaintiff of said loss, but that defendants maliciously, fraudulently, and illegally refused to honor plaintiff's claim and defendants following receipt of notice of said fire loss attempted to predate a notice to plaintiff of defendants' refusal of said contract of insurance and attempting likewise to predate a refund to plaintiff of the premium paid by plaintiff therefor."

The record is devoid of evidence that a policy of insurance was issued or even that there was an agreement to insure. The plaintiff now contends, however, that the

evidence did show actionable fraud by the broker's falsely representing to plaintiff that her property was insured. She contends that we should consider the petition as amended to fit the evidence. Assuming that, without so ruling, we find plaintiff faltered at the threshold of her adopted theory of fraud by failing to adduce convincing evidence that the broker made the alleged representation.

■■■■ Several principles lead us to that conclusion. Although we defer to the trial court's better opportunity to determine credibility of witnesses, we must independently determine the facts. (Civil Rule 73.-01(d), V.A.M.R.) In a court-tried case "the appellate court cannot forego its duty of weighing the competent evidence and reaching its own conclusions." (Hussey v. Robison, Mo., 285 S.W.2d 603[2].) Plaintiff's burden was to show by clear and convincing evidence (Bolten v. Colburn, Mo.App. 389 S.W.2d 384[7]) that the defendant broker made the false representation (Powers v. Shore, Mo., 248 S.W.2d 1[2]). Failure to do that is fatal to recovery (Emily v. Bayne, Mo.App., 371 S.W.2d 663[3]).

The evidence: Defendant Ethel N. Abbott did business as an insurance broker from her home in rural St. Louis county. She represented no insurance company but from time to time placed orders for her customers with various insurance agents. Back in 1958 plaintiff had applied to defendant for fire insurance; defendant ordered a policy from Kerr Brothers Insurance Agency and it was issued for a three-year period, expiring January 12, 1961. Earlier that month defendant wrote plaintiff about her insurance expiration, telling plaintiff to let her know if she wanted it renewed; plaintiff forgot and did not respond. Late in March plaintiff acted. The expired policy, which defendant had got for plaintiff, had been issued through Kerr Brothers. It bore their name so plaintiff sent them her $16.40 check for the initial premium. Kerr Brothers refused to write the policy be-cause plaintiff's house was in a "blighted area", and they returned her check. Then on March 27 plaintiff phoned the defendant about insuring her property. As recalled by plaintiff the defendant said: "Send the money right on. You are insured. Your premium is due." Defendant's version of this: "Mrs. Wright called me and says she was downtown at Kerr Brothers Insurance Company and wanted to renew her insurance, and they wouldn't take her order. She asked me could I get the insurance for her, and I said I would try. I called up Kerr Brothers, but they told me no, they wouldn't write the insurance." Defendant denied telling plaintiff she was insured, saying, "No, I did not, because I hadn't ordered the insurance yet." Immediately after the March 27th phone conversation the defendant verified Kerr Brothers' refusal to write the insurance, and then phoned an order for plaintiff's insurance to Northwestern's St. Louis office. Northwestern noted the order but made no commitment. On the same day plaintiff again phoned defendant asking about the insurance; defendant told her she had ordered it and the premium would be $16.40. Plaintiff then sent defendant a $16.40 check which defendant deposited in her account, ready to remit to Northwestern when the policy was issued. At noon on Saturday, April 1, defendant's mail brought a memorandum from Northwestern saying: "I'm sorry, Ethel. We can't write this insurance." Insurance offices being closed on Saturday afternoon, defendant took no action. On Sunday plaintiff's house burned. Defendant mailed plaintiff a check for $16.40, dated March 31 but postmarked April 7.

■■■ In resolving the disputed issue whether defendant told plaintiff her house was insured, "we must and should look to secondary facts and circumstances which will tend to give us light in our search for the truth." (Fried v. Schiff, Mo.App., 181 S.W.2d 776[3].)

The only substantially disputed testimony concerns the March 27th telephone conver-

sation. Plaintiff quotes defendant as saying "You are insured" and relies on that single statement to establish the basic element of fraud—that defendant made a representation. No other evidence corroborates plaintiff's assertion, either directly or by inference, that defendant told plaintiff she was insured. We have searched the record for "badges of fraud" (see Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297[27]), but find none. It does not appear that defendant's handling of plaintiff's application differed from the usual course of an insurance broker's business. There was no concealment, no undue enrichment, no suspicious circumstance. The defendant had no motive to tell plaintiff her house was insured when it was not.

Opposed to plaintiff's testimony we have defendant's denial that she told plaintiff she was insured and defendant's explanation that she first told plaintiff she would order the policy and later told her she had ordered it. This was corroborated by testimony that the Kerr Brothers agency did refuse to issue the policy, that defendant then placed an order for the insurance with Northwestern, and that Northwestern later refused to issue it. The defendant's testimony was straightforward, unshaken by cross-examination.

Fraud is never presumed (Schnuck v. Kriegshauser, Mo., 371 S.W. 2d 242[4]); when it is alleged, "the burden of proof rests upon him who asserts it to make it manifest" (Lowther v. Hays, Mo., 225 S.W.2d 708[4]). When in determining fraud "the equilibrium is so nearly approached that the mind of the triers of the fact is in a state of doubt as to whether the scale preponderates in favor of plaintiff or not, then, in such case, this doubt * * * should be [re]solved in favor of the defendant" (Shinnabarger v. Shelton, 41 Mo.App. 147, 1.c. 159). Plaintiff's evidence falls short of the stage of equilibrium. As said in reversing a trial court on an issue of fact in Fried v. Schiff, supra, at 181 S.W.2d 776[5],

"When all the facts and circumstances are considered, we are forced to the conclusion that the evidence on behalf of the defendants far outweighs plaintiff's evidence and bears the stamp of verity." Specifically we find plaintiff failed to meet her burden to show by clear and convincing evidence that defendant made a false representation. It follows that plaintiff's judgment against the defendant broker was erroneous, and it must be reversed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, plaintiff's judgment against defendant Ethel N. Abbott is reversed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.