Harry N. and Rose C. **FORMAN**, Appellants,

v.

**The UNITED STATES, Appellee.**

**Appeal No. 85–577.**

United States Court of Appeals, Federal Circuit.

July 8, 1985.

G. David Fensterheim, Williams & Connolly, Washington, D.C., argued for appellants. With him on the brief was Raymond W. Bergan.

Stephen R. Bergenholtz, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director.

Before DAVIS, SMITH and BISSELL, Circuit Judges.

DAVIS, Circuit Judge.

This case confronts us with two general questions relating to federal leases, as well as a more particular issue of lease interpretation. Harry N. and Rose C. Forman appeal from a decision of the Postal Service Board of Contract Appeals (PSBCA or Board) in which the Board ruled that the Postal Service could sublet to various busi-

nesses parts of premises which it leased from the Formans. PSBCA No. 1235, 84–3 BCA ¶ 17,514. The Formans contend that the Board erred in applying federal law to interpret the lease in this case, and, whether state or federal law applies, in interpreting the lease as allowing the Postal Service such broad subleasing authority. The Government argues that the Board had no jurisdiction to consider this case, but otherwise supports the decision. We affirm.

## I. *Background*

In 1960 the Formans entered into a contract with the Postal Service [1] in which the Formans agreed to construct a postal facility in Hollywood, Florida, and the Postal Service agreed to enter into a long-term lease of the facility. The 1960 contract contained as an appendix a copy of the Postal Service's then standard lease form. The parties entered into the lease here in dispute in October 1961 following the standard form.

Since 1980, the Postal Service has sublet various portions of the facility to several businesses, including a real estate investment company, a secretarial service, a telephone answering service, and lawyers. The Formans say that this violates paragraphs 2 and 8 of the Postal Service's lease. Paragraph 2 states that "Lessor hereby leases to the Government the following described premises ... to be used for postal purposes." Paragraph 8 provides that the Postal Service "may sublet all or any part of the premises or assign this lease but shall not be relieved from any obligation under this lease by reason of any such subletting or assignment." The Formans understood that these two paragraphs, when read together, limited the Postal Service's authority to sublet the premises only to other organizations involved in the Postal Service's function or affairs.[2] They never sought clarification from the Government, and there is no evidence that the Government agreed to their understanding, either at the time the lease was entered into or later.

In 1983, the Formans requested from the Government's contracting officer that he declare the lease terminated or, in the alternative, that the payments from the Postal Service to the Formans be increased by the amount which the Postal Service receives from the "non-postal" sublessees in excess of the Postal Service's rental payments under the lease. The contracting officer refused to terminate the lease and denied the monetary claim. The Formans filed a timely appeal to the Board seeking the same monetary award they requested from the contracting officer.

The Board ruled initially on two preliminary matters. The Government objected to the Board's jurisdiction, but the Board upheld its authority over this claim. Appellants contended that the Board should apply state (Florida) and not federal law as the rule of decision. The Board, however, relied on cases from the Court of Claims and the Third Circuit which held that federal law applies to lease agreements to which the Government is a party. The Board further noted that the choice of Florida law or applicable federal common law would not alter the result.

On the merits, the Board concluded that restrictions on alienation in a lease are generally construed very strictly against the landlord. In this particular case, the Board concluded that "the premises serve primarily as the Hollywood, Florida post office." The property was therefore "used for postal purposes," and not in violation of paragraphs 2 or 8 of the lease. The Board concluded: "No evidence has been presented that this fundamental character of the premises has been altered by the various commercial or professional subtenants." The Board thus denied the Formans' claim. They filed a timely appeal to this court.

---

**1.** At that time the Postal Service was called the United States Post Office Department, but for simplicity we use the name Postal Service throughout.

**2.** Thus, the Formans have not objected to the Postal Service's sublease of space to the Postal Employees Credit Union.

## II. *The Board's Jurisdiction*

Section 8(d) of the Contract Disputes Act [the Disputes Act], 41 U.S.C. § 607(d) (1982), provides that the boards of contract appeals "shall have jurisdiction to decide any appeal from a decision of a contracting officer ... relative to a contract" entered into by an executive agency within the particular board's purview. Section 3 of the Disputes Act, 41 U.S.C. § 602, limits the types of contracts to which the statute is applicable:

(a) *Executive agency contracts*

Unless otherwise specifically provided herein, this chapter [the Disputes Act] applies to any express or implied contract ... entered into by an executive agency for—

(1) the procurement of property, *other than real property in being.* [Emphasis added.]

The Government repeats here the jurisdictional arguments it presented to the Board. Specifically, it is contended that: a lease is a means by which the Government procures the use of real property in being; leases are, therefore, not contracts to which the Disputes Act applies under § 3(a)(1) of the Disputes Act; and accordingly the Board lacks jurisdiction over these contracts under § 8(d) of the Act. We disagree that Congress intended to exclude leases from the scope of the Disputes Act, and therefore reject the Government's reasoning.

The legislative history of the Disputes Act contains little illuminating Congress' intended meaning of the phrase "real property in being." The committee reports are silent. We are directed to the debate on the floor of the House of Representatives, in which Congressman Kindness remarked: "The procedures and remedies set down in the bill are applicable to all express or implied contracts entered into by the United States for (1) the procurement of property (other than the procurement of real property in being which is governed by the

laws of eminent domain)." 124 Cong.Rec. 31,645 (1978). This morsel is not a sufficient explanation of the statute's purpose or meaning for it to be highly persuasive in this case. We note, however, that the Government enters into a lease by agreement (as in the instant case) and not through exercise of eminent domain (or the threat thereof). To the extent that this single remark is probative, it supports the conclusion that Congress did not intend lease agreements to fall within the "real property in being" exception of § 3(a)(1).

The Government points to the Office of Federal Procurement Policy Act (the Policy Act), 41 U.S.C. §§ 401–409 (1982), § 6(a)(1) of which also excludes contracts for the procurement of "real property in being" from its coverage, and argues that it should be read *in pari materia* with the Disputes Act. The Policy Act created the Office of Federal Procurement Policy within the Executive Office of the President, and assigned that agency the task of devising guidelines on procurement applicable throughout the executive branch. Section 6(a)(1) of the Policy Act, 41 U.S.C. § 405(a)(1) (1982), presents a list of contracts to which the statute applies, which is in pertinent parts identical to the corresponding section (§ 3) of the Disputes Act.[3] Because the phrases in the two statutes are almost identical and because they focus on the same object—Government procurement—we assume for the purposes of this appeal that Congress intended the phrase to have the same meaning in the Disputes Act as it had in the earlier Policy Act. 2A Sands, *Sutherland's Statutory Construction* § 51.02 (4th ed. 1984).

The legislative history of the Policy Act is more informative in this regard than the history of the Disputes Act. The Senate Report accompanying the bill which became the Policy Act states:

Procurement under [§ 6(a)] covers property ... and construction, alteration, repair or maintenance of buildings and

---

**3.** The Disputes Act places a comma before "other than real property in being," while the Policy Act does not.

other forms of real property, but excludes real property in being. Accordingly, the acquisition of a fee, easements, leases, or other interests in existing buildings and land would not be subject to the policies and regulations promulgated by OFPP.

S.Rep. No. 93–692, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4589, 4599. This comment does not support the Government's case. "Acquisition of" a lease is not the same thing as "entering into" a lease. The Report's language apparently refers to the procurement of existing interests—fees, easements, leases, etc.—and not the initial creation of these interests. A leasehold does not exist until a lease is entered into, and by entering into a lease the Government does not acquire a pre-existing interest in the land; it establishes a new one. Thus, the Policy Act's language excluding contracts to procure "real property in being" fails to apply to newly-created lease agreements, and they fall within the purview of that statute and of the corresponding provisions of the Contract Disputes Act. This comports with Congressman Kindness' comments, since the Government can acquire a leasehold interest held by another through eminent domain, but, as mentioned *supra*, it creates a leasehold for itself by agreement.[4]

Moreover, the Government has even less ground for contesting the Board's jurisdiction in this particular case because the lease was a part of a larger agreement over which the Board plainly does have jurisdiction. In essence, in 1960 the Government promised to lease the Formans' property in exchange for their agreement to construct the postal facility. The lease's terms were made part of this contract by reference. Without doubt, the Board has jurisdiction over construction contracts. Were we to accept the Government's view in this case, the Board would have jurisdiction to construe the Formans' obligations, but not the Government's. We refuse to believe that Congress, when it excluded contracts relating to the procurement of "real property in being," intended such a bizarre result in this construction-plus-lease type of case.

### III. *Choice of Law*

■  In light of *Powers v. United States Postal Service*, 671 F.2d 1041 (7th Cir. 1982), the Formans assert that application of Florida law is appropriate here. In *Powers*, the issue was whether the landlord could evict the Postal Service for failure to pay $1,600 in rent, which the Postal Service had expended to repaint the leased premises. In order to determine whether the duty to paint fell on the landlord or the tenant under the lease, the Seventh Circuit looked to applicable state law, expressly disavowing the view of the Court of Claims that federal law controls Government leases. 671 F.2d at 1043 (noting that the court in *Brooklyn Waterfront Term. Corp. v. United States*, 90 F.Supp. 943, 948, 117 Ct.Cl. 62, 84, *cert. denied*, 340 U.S. 931, 71 S.Ct. 493, 95 L.Ed. 672 (1950), applied federal law when construing a Government lease).[5] However, we have no such option, as decisions of our predecessor courts are binding upon this panel unless changed by this court *in banc*. Moreover, we have no occasion, in this case, to ask the court *in banc* to consider the matter of federal vs. state law since the postal lease here involved appears to be a general postal form used in the 1960's which was adopted for reasons peculiar to the Postal Service. *See* Part IV, *infra*. Federal law, rather than the law of the individual states, seems ap-

---

4. If we were to put legislative history (both of the Policy Act and of the Contract Disputes Act) wholly aside, we would reach the same conclusion from the bare terms of the statutes because leases are normally considered within the realm of contracts (*see Keydata Corp. v. United States*,

504 F.2d 1115, 1123, 205 Ct.Cl. 467 (1974)) and also as personal (rather than real) property. 51C C.J.S., *Landlord & Tenant*, § 26 at 62–63.

5. The reasons for the Court of Claims' conclusion are more fully expressed in *Keydata Corp. v. United States, supra*.

propriate at least for that kind of specialized lease.[6]

## IV. *Interpretation of the Lease*

Appellants urge that the statement in paragraph 2 of the lease referring to use of the premises "for postal purposes" is a limitation on the use to which the property may be put. This covenant is said to run with the land, and thus to be binding on the Postal Service's sublessees. The Formans also point out that the Postal Service drafted the lease, and that any ambiguities in the lease should be strictly construed against the author. Finally, they note that, on a prior occasion, the Postal Service sought their approval to enter into a sublease, thus indicating (we are told) that even the Postal Service has construed paragraph 2 as a limitation on the uses to which the property may be put.

The construction of a lease provision setting forth a particular purpose for the property is not a novel issue. Many courts and scholars have considered this matter. We rely here on those authorities directly on point, rather than beginning anew from the Formans' profferred general principles concerning the construction of lease contracts.

▮▮▮ As a start, we note that (absent a valid restriction) a tenant may put the leased premises to whatever lawful purpose it so desires consistent with the design and construction of the property. R. Schoshinski, *American Law of Landlord Tenant*, § 5:6 (1980). The landlord is free to impose restrictions on the tenant's use of the property, but in light of the principle which gives the tenant free use, any restrictions are construed narrowly against the landlord. "Because the lessee stands in the position of an owner in fee with regards to rights of user ... the lessee's right of use are [*sic*] strictly construed against the landlord where there is any ambiguity." 1 *American Law of Property* § 3.40 (A. Casner ed. 1950). Applied to the specific instance in which a lease provision sets forth the use of the property, the authorities are in agreement that such a provision, absent a clear and specific indication that the landlord intended to limit the tenant's use of the property, is generally permissive and not restrictive. That is, it indicates that the landlord is aware of and sanctions the tenant's intended use, but does not limit tenant to that use alone. *Id.;* Schoshinski, *supra,* §§ 5:6–5:7; *Hatcho Corp. v. Della Pietra,* 195 Conn. 18, 485 A.2d 1285, 1289 (1985); *Crestwood Plaza, Inc. v. Kroger Co.,* 520 S.W.2d 93, 97 (Mo. App.1974); *Southland Corp. v. D.C. Burns Realty & Trust Co.,* 166 Colo. 444, 444 P.2d 394, 396 (1968) (*en banc*); *Borgen v. Wiglesworth,* 189 Kan. 261, 369 P.2d 360, 363 (1962); *Silkey v. Malone,* 123 Ind.App. 395, 111 N.E.2d 665 (1953) (*en banc*); *Otting v. Gradsky,* 294 Ky. 779, 172 S.W.2d 554 (1943).

A recent Wisconsin case, *Rapids Associates v. Shopko Stores, Inc.,* 96 Wisc.2d 516, 292 N.W.2d 668 (1980), presented a situation identical in pertinent respects to the one we have here. The landlord leased the property "for the purpose of conducting a retail department store." The tenant sought to sublet the property to another business. The court held that the language in the lease did not prohibit the sublease:

---

**6.** We note parenthetically that, since the Seventh Circuit's decision in *Powers,* Congress has taken action which tends to undercut one of the principal rationales behind that decision. The Seventh Circuit reasoned that the twelve regional circuits are much more likely to create a uniform interpretation of state landlord-tenant law than federal landlord-tenant law, *i.e.,* when applying state law a conflict between the circuits is of negligible concern. Ever since Congress passed the Federal Courts Improvement Act in 1982, the regional circuits will generally face (except for postal leases, *see* 39 U.S.C. § 409(a)) a landlord-tenant problem involving the United States as a tenant only when the landlord can seek wholly equitable relief or an eviction. Most cases will come on appeal to this court, either from the district courts (under the little Tucker Act), from the Claims Court, or from the Boards of Contract Appeals. This court will, therefore, be in a good position to create a uniform body of federal law in this area; indeed, the danger of confusion might be enhanced if this court were to embark on an effort to interpret the laws of the fifty states, the District of Columbia, and the several territories.

While this clause does describe [tenant's] intended use of the premises, it does not contain terms of restriction prohibiting uses other than a retail, discount department store. Generally, absent express restrictive terms, such descriptive clauses are merely permissive in nature and do not restrict lessee's use of the premises.

292 N.W.2d at 670 (footnote omitted). The court also noted that, had the parties intended the lease to restrict the tenant's use of the premises, "they could have inserted simple words of limitation." *Id.*

█ Based on this accepted principle, we hold that paragraph 2 of the Postal Service's lease with the Formans describes the Postal Service's intended use of the property and does not limit the other uses to which the Postal Service or its sublessees (as authorized by paragraph 8 of the lease) may put the property. The lease simply does not say that use for postal purposes is the *only* use, and there is no ground for implying such a narrowing limitation.[7] Appellants make much of the fact that, the first time the Postal Service subleased part of the facility, it asked the Formans' consent, but obviously that did not constitute a settled interpretation of the lease because all the subsequent subleases were made without any such request.

Great emphasis is likewise placed on the lease formulation making the leased property "be used for postal purposes" a part of the "granting" language of the lease, and framing that provision in terms of a "covenant and agreement." The inference, it is claimed, is that the Formans leased the property only for postal purposes and that is the full scope of the demise. There are twin answers. The general rule is that such covenants are not construed as restrictive (on the lessee) unless clearly expressed (51 C.J.S., *Landlord & Tenant* § 235 (1967); 49 Am.Jur.2d *Landlord and Tenant* § 238 (1970)),[8] and, at the very best for the Formans, that is certainly not true here. Rather, the terms of this lease, read literally, seem to show that only the lessors (not the Government) "covenant and agree" that the demised premises are "to be used for postal purposes."[9] The Government made no such express promise.

AFFIRMED.

---

**7.** On the contrary, there are very good reasons suggesting that the inclusion of the phrase had no such restrictive purpose whatever. To facilitate the ability of potential construction-lessors (for the Postal Service) to obtain necessary financing, Congress enacted (in 1960) a special statute authorizing the Postmaster General to agree to such construction-plus-lease arrangements for periods up to 30 years, if the arrangements were "for postal purposes" or "for use for postal purposes." 39 U.S.C. § 2103(a). This record contains specific and undisputed testimony that the instant type of lease was used to show that the lease fell under that particular statute, and also in order to allow the construction-lessor to obtain financing—and it is plain that the lease traces the very words of § 2103(a). Moreover, § 2103(a)(2)(B) expressly permits the Postmaster General to dispose of

such property (acquired under § 2103(d)) "in such terms as he deems appropriate to the best interests of the United States," thus literally covering the sublease made in this case.

**8.** As it happens, Florida strongly enforces this principle. *Great Southern Aircraft Corp. v. Kraus*, 132 So.2d 608, 609 (Fla.Dist.Ct.App. 1961). For that reason, the Board noted that application of Florida law, pressed by appellants, would not help them.

**9.** The Government argues that this was done because the lease required the lessors to repair the premises to satisfactory condition "for the purposes leased," if any part of the leased property becomes "unfit for use for the purposes leased."