**EMRO MARKETING COMPANY, Appellant,**

v.

**William Niles PLEMMONS, Appellee.**

No. 87–1847.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1988.

Decided Aug. 24, 1988.

Rehearing and Rehearing En Banc Denied Nov. 2, 1988.

Peter W. Herzog, St. Louis, Mo., for appellant.

Melvin E. Carnahan, Rolla, Mo., for appellee.

Before McMILLIAN, WOLLMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

EMRO Marketing Company (EMRO) appeals from a final judgment entered in the District Court for the Eastern District of Missouri terminating a lease between EMRO, as lessee, and William Niles Plemmons (Plemmons), as lessor, due to the breach by EMRO of an implied covenant of continuous operation. For reversal, EMRO argues the district court[1] erred in (1) implying a covenant of continuous operation, and (2) refusing to excuse EMRO's non-performance of the implied covenant due to provisions of the Bankruptcy Code. For the reasons discussed below, we affirm.

BACKGROUND

This appeal involves a suit by EMRO, as lessee, for a declaratory judgment and injunctive relief regarding the status of a lease of real property. Plemmons owns the property in question, which is located in St. James, Missouri. Greta L. Plemmons, his sister and predecessor in interest, entered into a lease agreement concerning

---

**1.** The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

the property dated December 13, 1966, with EMRO's predecessor in interest, Nickerson & Nickerson, Inc. (Nickerson). The lease provides for a primary lease term to and including June 1, 1987, and thereafter, at lessee's option, for six successive renewal lease periods of six years each. The lease also grants the lessee an option to purchase the property for $30,000.00.

The original lessee, Nickerson, intended to use the premises to operate a Nickerson Farms store. The "use" clause of the lease sets forth this intention:

> The leased premises are to be used as a site for a Nickerson Farms Store for the sale of food, gifts, candy, petroleum products and other merchandise customarily handled by such stores; and for the conduct of any lawful business; and the Lessee is hereby given the right to sublease or underlet said premises or to assign the whole or any part of the term of this lease.

The lease also provides the lessee the right to remove buildings and other property placed on the premises by the lessee.

> Lessee shall, without any obligation or liability whatsoever, have the right, at any time during the continuance, or within thirty days after termination of this lease, or any renewal or extension thereof, either to remove from, or leave upon, the leased premises any, all or any part or parts of any and all buildings, fixtures, equipment and other property owned by Lessee or placed on the leased premises by Lessee during the term of, or any renewal or extension of, this or any previous lease.

The rental term of the lease provides:

> As rental for this Lease, Lessee agrees to pay One Hundred and no/100 dollars ($100.00) per month on the first day of each month in advance, to Lessor unless otherwise provided herein, and also pay gallonage rental of ½ (one-half cents) per gallon on gasoline sales made by lessee at its Nickerson Farms Store to be located on the premises * * *.

Shortly after executing the lease, Nickerson constructed a Nickerson Farms store on the premises. Nickerson later assigned the lease to EMRO, who in turn sublet the premises to o.g.y., Inc. (o.g.y.), which then operated on the premises a gas station and store-restaurant similar to the Nickerson Farms operation. O.g.y. subsequently entered bankruptcy reorganization proceedings and ceased business operations on the premises in December of 1984. Since that time EMRO has continued to pay the base monthly rental of one hundred dollars per month to Plemmons. No gallonage rental has been paid during this period, however, because no gasoline retail sales have been made on the premises.

On January 14, 1985, EMRO filed a compliant in the District Court for the Northern District of Illinois alleging that o.g.y. was in default on the sub-lease and seeking to obtain possession of the premises. While that case was pending, o.g.y. filed, on September 23, 1985, a Chapter 11 petition in the Bankruptcy Court for the Northern District of Illinois.

In the midst of the Illinois litigation, Plemmons, on April 1, 1986, informed EMRO that he considered EMRO to be in violation of the lease because of the failure to operate a Nickerson Farms store on the premises and the resultant failure to pay monthly gallonage rentals. EMRO then filed this action for declaratory relief to establish that no breach of the lease had occurred. Plemmons counterclaimed, seeking a declaratory judgment that the lease had been terminated and requesting possession of the premises.

The district court conducted a bench trial on December 17, 1986, and entered judgment in favor of Plemmons on January 14, 1987. The district court found an implied covenant by the lessee to continue the operation of a business generating gasoline sales throughout the term of the lease. Finding a breach of this implied covenant, the district court ordered that the lease be terminated as of April 1, 1986. This appeal followed.

DISCUSSION

We consider first EMRO's argument that the district court erred in finding an implied covenant by the lessee to contin-

ue the operation of a business generating gasoline sales throughout the term of the lease. The parties agree that Missouri law must govern the resolution of this issue.[2]

We believe the district court correctly found that the provisions of this lease support an implied covenant of continuous operation. The "use" term of the lease is restrictive in nature—it expressly restricts the lessee's use of the premises to a site for a Nickerson Farms store. Further, the price term of the lease contemplates payment, in significant part, in the form of gallonage rental, which could only be collected if such a business was operating on the premises. A reading of the contract as a whole, we believe, supports the district court's conclusion that the parties contemplated a specific and exclusive use of the property.

The lease provisions relied upon by EMRO do not alter this conclusion. The right to sublease, underlease or assign for all or part of the duration of the lease does not support the contention that continuous petroleum sales were not contemplated by the contracting parties. The case cited by EMRO, *Crestwood Plaza, Inc. v. Kroger Co.*, 520 S.W.2d 93 (Mo.App.1974), for the proposition that a subletting provision abrogates a retail percentage as a source of rent is not apposite to this action. Assuming, for the sake of argument, the absence of the requirement in this lease that the "premises are to be used for a Nickerson Farms store for the sale of * * * petroleum products," the key ingredient in the *Crestwood Plaza* analysis is "a substantial guaranteed rent." *Id.* at 97. Here we do not have that. The guaranteed rent is $100.00 per month. The value of the property at the time the lease was entered into was at least $30,000.00 as determined by the parties. Even though the lessee was to pay the general and special tax assessments, $100.00 per month for a $30,000.00 commercial property cannot be considered "substantial guaranteed rent."

Likewise, the improvements removal clause is merely a severance provision which permits the lessee to remove buildings, fixtures and other improvements which would ordinarily become the property of the fee holder upon completion of the term of the lease. The contract language simply permits Nickerson or its assigns to determine whether it is economically feasible to remove the improvements or to leave them for the landowner to contend with. It is likely that every well drafted retail gasoline lease in force in America contains such a clause, intended for the purpose stated above. Its presence in this lease is not relevant to the existence of an implied covenant of continuing petroleum product sales.

Simply stated, we agree with the district court that the agreement contemplated an implied covenant of petroleum product sales. The district court was correct in this analysis.

■ The alternative contention of EMRO, that it has been precluded by bankruptcy law from fulfilling the implied covenant, is more problematic. Clearly, EMRO was permitted to sublease. Thus, it should not be penalized for matters beyond its control, for instance, the inability to repossess the leased premises because of bankruptcy law. *See* 11 U.S.C. §§ 362(a)(1), (3). EMRO had a duty, however, to move expeditiously to seek to lift any stay which precluded repossession. Additionally, in this case it appears that EMRO did not effectively pursue repossession for almost seven months prior to being stayed by the bankruptcy filing.[3] EMRO is not entitled to cure its breach of the implied covenant

---

**2.** As noted, the lease agreement was prepared by Nickerson, EMRO's predecessor in interest. In fact, the contract consists of a printed form, 1–NF–3/66, which form was probably used, with individualized insertions, for all of Nickerson's leased business sites. Thus, ambiguities, if any, must be construed against EMRO, as the successor of the drafter of the instrument. *Keith v. Tucker*, 483 S.W.2d 430, 434 (Mo.App. 1972).

**3.** Apparently the subtenant business closed in November 1984 and the sublessee filed for bankruptcy on September 23, 1985. EMRO filed suit on January 14, 1985, after giving notice of breach of the sublease and an opportunity to cure. The stay was not imposed until approximately seven months later.

after such a period of time. It may not rely upon these circumstances to support an impossibility defense in this case.

## CONCLUSION

The decision of the district court is affirmed.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. In my view the district court erred in finding an implied covenant by the lessee to continue the operation of a business generating gasoline sales throughout the term of the lease. The district court based its implication of a covenant of continuous operation on two provisions in the lease: the rental provisions including a percentage of gasoline sales as rent, and the use provisions of the lease contemplating the use of the premises as the site of a Nickerson Farms store. I am unable to find support for the implied covenant in either of these lease provisions, particularly when the lease is viewed as a whole.

The law in Missouri is clear that a rental provision based in part on retail sales by the lessee is insufficient to give rise to an implied covenant to engage in continuous retail activity. In *Crestwood Plaza, Inc. v. Kroger Co.*, 520 S.W.2d 93 (Mo.Ct.App. 1974), the Missouri Court of Appeals construed a percentage lease where the lessee was required to pay both a minimum fixed rent plus a percentage of its sales. The lessee wished to sublet the premises to a company that would not continue to operate a similar "retail food supermarket." The lessor brought suit to prevent the sublease, but the Missouri Court ruled in favor of the lessee. The court reasoned that

[i]n a situation where there is a percentage lease and the lessee is required to pay both a substantial guaranteed minimum rent plus a percentage of the sales, it has held that, in the absence of a provision forbidding subletting, subletting is not precluded even though a portion of the rent is computed on the basis of percentage of income.

*Id.* at 97. The holding in *Crestwood Plaza* that a percentage lease does not prevent subletting to a different type of lessee reveals that such a provision, under Missouri law, does not give rise to an implied covenant of continuous consistent operation. To the contrary, where, as here, there is a not unsubstantial minimum fixed rent in addition to the percentage rent, an implied covenant of continuous operation may not be implied. Although the majority finds the fixed rent unsubstantial, I do not. "A covenant will not be implied merely because without it the contract would be unwise." *Id.* at 98.

The majority also points to the use provision of the lease in support of the district court's implied covenant. This provision merely set forth the intention of the original lessee, Nickerson, to operate a Nickerson Farms store on the premises:

The leased premises are to be used as a site for a Nickerson Farms store for the sale of food, gifts, candy, petroleum products and other merchandise customarily handled by such stores; and for the conduct of any other lawful business; and the Lessee is hereby given the right to assign the whole or any part of the term of the lease.

The majority reads the clause providing that the premises "are to be used as a site for a Nickerson Farms store" as restrictive—that the premises may *only* be used as a site for a Nickerson Farms store. The general rule, however, is that "a provision permitting a particular use ... is not to be interpreted as a single-purpose restriction," and absent "express restrictions, a lessee is free to use the premises in any lawful manner." *Crestwood Plaza*, 520 S.W.2d at 97; *see also Soulway Realty Co. v. Machalek*, 17 S.W.2d 682, 683 (Mo.Ct.App.1929) ("Generally speaking, it is held that a provision in a lease merely permitting a particular use of the leased premises does not amount to a restriction"). "[I]n light of the principle which gives the tenant free use, any restrictions are construed narrowly against the landlord." *Forman v. United States*, 767 F.2d 875, 880 (Fed.Cir.1985).

[In] the specific instance in which a lease provision sets forth the use of the property, the authorities are in agreement that such a provision, absent a clear and specific indication that the landlord intended to limit the tenant's use of the property, is generally permissive and not restrictive. That is, it indicates that the landlord is aware of and sanctions the tenant's intended use, but does not limit [the] tenant to that use alone.

*Id.*

Accordingly, I read the use clause of the lease as permissive—merely stating the lessor's acquiescence to one use of the premises but not restricting the lessee to only that use. This permissive reading of the provision is supported by the fact that the lease also gives the lessee the right to remove all buildings from the premises. Because the lease gives the lessee the right not to have any structure on the premises at all, the use clause must be read as permissive rather than restrictive in order for it to be consistent with the contract as a whole. Because I do not read the use clause of the lease to restrict the lessee's use of the premises to a Nickerson Farms store, I accordingly find no authority in that clause to imply a covenant of continuous operation.

Construing the lease as a whole, I am unable under Missouri law to find any clause supporting an implied covenant of continuous operation. I would reverse the decision of the district court and remand the case with directions to enter judgment in favor of EMRO.