GIESSOW RESTAURANTS, INC.,
Plaintiff/Respondent,

v.

RICHMOND RESTAURANTS, INC.,
Defendant/Appellant.

No. ED 88471.

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 7, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 12, 2007.

Leo V. Garvin, Jr., Clayton, MO, for appellant.

Mary C. Bonacorsi, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Richmond Restaurants, Inc. ("Lessor") appeals from the judgment of the Circuit Court of St. Louis County granting Giessow Restaurants, Inc.'s ("Lessee") motion for summary judgment. The trial court determined that Lessee did not breach its obligations by closing its restaurant because the lease did not contain an implied covenant of continuous use and Lessor's notice of termination was not a valid notice of default, termination, or forfeiture. We affirm.

### Facts and Procedural History

The facts of this case are undisputed, as the parties executed a statement of stipulated facts. In addition, each party submitted separate statements of uncontroverted facts. These facts, viewed in a light most favorable to Lessor are: The property at issue in this case, 7950 Clayton Road in St. Louis County, was owned in fee simple by Bernard and Regina Streigel ("Streigel") and their successors in interest. In 1950, Streigel entered into a lease agreement with Mandel Investment Company ("Mandel") for a term of 99 years.

Thereafter, Mandel assigned its interest in the lease to Lake Forest Development Corporation ("Lake Forest"). Subsequently, in 1954, Lake Forest subleased the property to Lessor.

In 1959, Lessor and Lessee entered into a sublease (the "Agreement"), which stated that the lease was "for no other purpose or business than that of a restaurant, ice cream parlor, bar, tavern and cocktail lounge for the sale and dispensing of food and liquor, and for all activities related and incidental thereto." Lessee agreed to pay $25,000 per year in fixed rent, as well as seven percent of its gross sales in excess of $357,142.85. Lessee then opened a Howard Johnson's restaurant on the property and paid both the fixed rent and the percentage rent.

In 1984, the Howard Johnson operating agreement terminated and the parties amended the Agreement (the "Amended Agreement"). Under the Amended Agreement, Lessor permitted Lessee to remodel the improvements located on the property, which Lessee did at his own cost and expense. The Amended Agreement also provided Lessee with an option to renew or extend the lease term for "four (4) successive periods of ten (10) years and a final period of nine (9) years and six (6) months, ending June 30, 2049."

The Amended Agreement contained the same fixed rent provision, but it altered the percentage rental provision. The new percentage rent was seven percent of gross sales between $357,142.85 and $962,391.54 and an additional seven percent of gross sales in excess of $962,391.54, not to exceed $20,000.

Following the renovations to the property, Lessee opened and operated a restaurant called Layton's until June 30, 2004. At that time, Lessee closed the restaurant because it had been losing money for a

number of months. From July 2004 until June 2005, Lessee continued to pay Lessor the fixed rent and Lessor accepted and deposited it.

In March 2005, Lessor sent Lessee a Notice of Default, in which Lessor claimed that Lessee's act of closing the restaurant was a breach of Lessee's obligations under the Amended Agreement and Lessee had 60 days to remedy the breach. Lessee responded, asserting that the closing of the restaurant did not constitute a breach of the Amended Agreement, because the Amended Agreement did not contain an express covenant of continuous business use.

In May 2005, Lessor sent Lessee a Notice of Termination of the Amended Agreement, demanding that Lessee deliver possession of the property to Lessor by July 18, 2005, as Lessee had not remedied its alleged breach. Lessee did not deliver possession of the property and continued to tender the fixed rent payments each month. Commencing in July 2005, Lessor refused to accept the fixed rent payments.

In June 2005, Lessee filed a petition for declaratory judgment, seeking a declaration that it was not in breach of its obligations under the Amended Agreement, that it was not obligated to operate a restaurant on the property at all times, and that it had no obligation to pay percentage rent in the absence of gross sales. Lessor answered Lessee's petition and then filed a counterclaim for declaratory judgment, seeking a declaration that Lessee was obligated to operate a restaurant on the property at all times, Lessee was in breach of its obligations under the Amended Agreement, its March 2005 letter was a valid notice of default, its May 2005 letter was a valid notice of forfeiture, and the Amended Agreement was forfeited on July 18, 2005.

The parties filed motions for summary judgment and the trial court granted Lessee's motion and denied Lessor's motion. The trial court found, as a matter of law, that there was no express or implied covenant of continuous business use in the Amended Agreement and therefore, Lessee was not obligated to operate a business on the premises. The court further concluded that Lessee was not obligated to pay percentage rent in the absence of business operations and gross sales, that Lessee was not in breach of its obligations under the Amended Agreement, and that Lessor's notice of termination for failure to operate a business and pay percentage rent was not a valid notice of default, termination, or forfeiture. This appeal followed.

### Standard of Review

Our review of a grant of summary judgment is essentially *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the non-movant. *Id.* Facts set forth in support of the moving party's motion are considered to be true unless contradicted by the non-movant's response. *Id.* A trial court's judgment will be upheld if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Id.* at 380.

### Analysis

In its first point on appeal, Lessor contends the trial court erred in granting Lessee's motion for summary judgment because the trial court failed to recognize that the Amended Agreement contained an implied covenant of continuous business activity on the property and that failure to operate a business on the property resulted in a forfeiture of the lease. In response, Lessee asserts that, pursuant to

the unambiguous terms of the Amended Agreement, Lessee was not under any obligation to continuously operate a restaurant on the property. We agree with Lessee.

■ There is no dispute that the Amended Agreement failed to contain an express continuous business use provision. Therefore, Lessor's appeal concerns only whether there was an implied covenant that Lessee would operate a business on the property. It is well-established that when parties reduce their agreements to writing we presume that the instrument contains the entire contract, and we will not imply additional provisions unless necessary to effectuate the parties clear intentions. *Conservative Federal Sav. and Loan Ass'n v. Warnecke*, 324 S.W.2d 471, 478–79 (Mo.App.1959). When we do find implied obligations, these implied obligations "rest entirely upon the presumed intention of the parties, as gathered from the terms actually expressed in the writing itself; and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to expressly stipulate with reference thereto, or it must appear that it is necessary to infer such an obligation to effectuate the full purpose of the contract." *Id.; see also, Johnson v. Missouri–Kansas–Texas R. Co.*, 216 S.W.2d 499, 502 (Mo.1949). Implied covenants arise when there is a satisfactory basis in the express contract that makes it necessary to imply certain duties and obligations in order to effectuate the purposes of the parties. *Id.* A court will not "find an implied covenant if the parties have either dealt expressly with the matter or have intentionally left the contract silent on the point." *Crestwood Plaza, Inc. v. Kroger*, 520 S.W.2d 93, 97 (Mo.App. E.D.1974). It is not enough to conclude that an implied covenant is necessary to make the agreement fair or necessary to make the agreement fair or that without it, an agreement is unwise or will operate unjustly. *Warnecke*, 324 S.W.2d at 479.

Lessor asserts that there is an implied covenant of continuous business activity, because the Amended Agreement contained a restrictive clause, Lessor could withhold consent to any assignment of the lease, Lessor was responsible for the real estate taxes, and a significant portion of the rent was in the form of percentage rent, rather than fixed rent. Lessor relies on *EMRO Marketing Company v. Plemmons*, 855 F.2d 528 (8th Cir.1988), to support its contention. In *EMRO*, the Eighth Circuit, applying Missouri law, concluded that the lease provisions at issue supported an implied covenant of continuous operation where the lease contained a restrictive purpose clause and the rent was comprised of a fixed portion and a percentage portion. *Id.* at 530. The lease allowed the property to be used for a gas station and provided for a fixed rent of $100 per month with a percentage rent of one-half cent per gallon of gasoline sold. *Id.* The court concluded that a reading of the lease as a whole showed the parties intended to require continuous operation of a business. *Id.* First, the purpose clause of the lease restricted the use of the property to a gas station. Second, the court found that the lease contemplated payment of rent "in significant part" in the form of a percentage rent. *Id.* The court stated that the fixed rent was not "a substantial guaranteed rent" because the value of the property at the time of the lease was $30,000, so even if the lessor was responsible for paying the taxes, $100 per month was not a substantial amount. *Id.* Thus, the court determined that the lease contained an implied covenant of continued use.

In reaching its conclusion, the Eighth Circuit declined to follow applicable Mis-

souri law as set forth in *Crestwood Plaza, Inc. v. Kroger*, 520 S.W.2d 93 (Mo.App. E.D.1974). In that case, this Court held that the mere fact that a rental provision of a lease was based upon a combination of a fixed rent and a percentage rent is insufficient to find an implied covenant of continued use. *Crestwood Plaza, Inc.*, 520 S.W.2d at 97; *see also EMRO*, 855 F.2d at 531 (McMillian, J., dissenting). In fact, Missouri courts consistently refuse to find implied covenants in clearly drafted leases. *See Halls Ferry Investments, Inc. v. Smith*, 985 S.W.2d 848, 852–53 (Mo.App. E.D.1998) (holding language of lease did not indicate implied covenant of continued use); *Michigan Sporting Goods Distributors, Inc. v. Lipton Kenrick Assocs.*, 927 S.W.2d 570, 573 (Mo.App. E.D.1996) (same).

■ In this case, the Amended Agreement expressly states that Lessee may use the property "for no other purpose or business than that of a restaurant, ice cream parlor, bar, tavern and cocktail lounge for the sale and dispensing of food and liquor, and for all activities related and incidental thereto[.]" However, the Amended Agreement does not expressly place a duty on Lessee to ensure the existence of such a business. Lessor is correct that it is a restrictive clause, because it restricts the purposes for which Lessee may use the property. However, the restrictive clause does not thereby also require that Lessee must, at all times, put the property to use. Rather, it articulates the purposes for which Lessee may use the property, should it choose to use the property. Lessor disregards the fact that the Amended Agreement is intentionally silent beyond this restrictive clause. Indeed, a provision which restricts use of the premises is not identical to a provision which enjoins nonuse of the premises. *See Benson v. Sauris*, 204 S.W. 550, 551 (Mo.App. S.D.1918)

(where the plaintiff sought to enjoin the nonuse of the premises, the court concluded that "[i]f defendant desires to abandon the premises, and yet pay his rent, we cannot see where plaintiff has room for complaint, except the doubtful and remote contingency of depreciation of rental value for which there is no recourse in a court of equity.")

The Amended Agreement here is further distinguishable from the lease in *EMRO* because it includes a rental provision that is much more substantial than the nominal rent contemplated in EMRO. The Amended Agreement provides for a fixed rent of $25,000 per year, a percentage rent of seven percent of gross sales between $357,142.85 and $962,391.54 and an additional seven percent of gross sales in excess of $962,391.54, not to exceed $20,000. By contrast, the *EMRO* lease guaranteed a fixed rent of only $100 per month supplemented by a percentage rent of one-half cent per gallon of gasoline sold. We cannot conclude that the fixed rent of $25,000 per year in this case is insubstantial, especially when compared to the $100 per month the Eighth Circuit considered nominal in *EMRO*. Therefore, because the Amended Agreement provides for substantial guaranteed rent and Missouri law disfavors implied covenants, we conclude that the Amended Agreement does not contain an implied covenant of continuous business use.

Because the Amended Agreement contained no express or implied covenant imposing an obligation on Lessee to continuously operate a business on the premises, the Lessee did not breach the Amended Agreement when it failed to operate any business or pay the percentage rent. Accordingly, the trial court did not err in granting Lessee's motion for summary judgment. Point denied.

In its second and third points on appeal, Lessor urges this court to review the trial court's denial of its motion for summary judgment on the grounds that Lessor complied with the procedural requirements for declaring a forfeiture of the Amended Agreement. Because we have concluded in Point I that Lessee was not in breach of the Amended Agreement and the trial court properly entered summary judgment for Lessee, we do not address these points on appeal. However, we note that generally, a denial of a motion for summary judgment is not a final, appealable order, even when the denial occurs at the same time the trial court grants summary judgment to the other party. *Jones v. Landmark Leasing, Ltd.*, 957 S.W.2d 369, 373 (Mo.App. E.D.1997).

### *Conclusion*

Based upon the foregoing, we affirm the judgment of the trial court.

BOOKER T. SHAW, C.J., and ROBERT G. DOWD, JR., J. concur.