HUMBIRD CHEESE COMPANY, Respondent, vs. FRISTAD and another, Appellants.

*March 8—June 20, 1932.*

284

*Linderman, Ramsdell & King* of Eau Claire, for the appellant Fristad.

For the appellant American Surety Company there were briefs by *Frawley, Stolts & Tronsdal* of Eau Claire, and oral argument by *Victor H. Stolts.*

For the respondent there were briefs by *Rush & Devos* of Neillsville, attorneys, and *Harold M. Wilkie* of Madison of counsel, and oral argument by *Mr. Wilkie* and *Mr. A. L. Devos.*

The following opinion was filed April 5, 1932:

FOWLER, J.   The appellants claim (1) that the finding of the jury exonerating Fristad from "any acts of fraud or dishonesty" entitled it to a judgment of dismissal; (2) that deferring payment of the plaintiff's bills did not under the evidence constitute a wilful misapplication of its funds; (3) that the court erred in instructing the jury as to the meaning of the term "wilful misapplication;" and (4) that the court erred in instructing as to the quantum of evidence essential to meet the plaintiff's burden of proof on the questions involving fraud.

(1) The jury by their finding exculpated Fristad from acts of fraud and dishonesty.   This freed him from imputation of intentional wrongdoing and characterized his acts at worst as done negligently or through mistake of judgment as distinguished from done with wrongful intent or in bad faith.   It seems too clear to require citation of authority to support it that negligence is not fraud.   That it is not, within the terms of a fidelity bond, was held in *Salley v. Globe Indemnity Co.* 133 S. C. 382, 131 S. E. 616.   And acts resulting from mistake of judgment are not acts of fraud or dishonesty any more than are acts done negligently.

The trial court was of opinion that under secs. 221.27, 221.28, and 348.19, Stats., requiring a bank to keep a reserve

of twelve per cent., forbidding increase of loans when the reserve is below the legal limit, and making it a crime for a bank officer to receive deposits when he knows his bank is unsafe and unsound, Fristad was guilty of acts of fraud and dishonesty as matter of law which authorized judgment for the plaintiff notwithstanding the jury's finding of exculpation. We consider this view erroneous and that the question of his fraud and dishonesty was for the jury in view of evidence tending to support the inference that he expected the bank to overcome its difficulties. Among these may be mentioned that he had paid the one hundred per cent. voluntary assessment on thirteen shares of his stock in the bank levied late in 1928. In February, 1929, he bought twenty-nine shares of the bank's stock and paid the one hundred per cent. assessment thereon. He kept his own account in the bank to the day of its closing as did eight members of his family. The commissioner of banking, with full knowledge of conditions, was permitting the bank to run and endeavoring to nurse it along. The loans of the bank were not increased after June 23d, except for a slight increase for two or three days. The loans exceeded the deposits by some $15,000, and if collectible would save depositors from loss. The bank held paper acceptable to correspondent banks for discount that could have been used to keep up the reserve, even at the time the bank closed. The immediate cause of closing the bank was a bankruptcy in the vicinity and current talk of depositors withdrawing on account of it and the presentation of a $3,000 check. The finding of the jury that Fristad knew the bank was "unsafe and unsound" was quite likely due to an unfortunate, if not erroneous, framing of the question, (b) "Was the bank, after July 23, 1929, in an unsafe and unsound condition by reason of its failure to keep its reserve in accordance with the law?" From this the jury might infer that the mere fact that the reserve was below twelve per cent. would warrant an affirmative answer.

There was nothing in the instructions to the jury to preclude this view. That a reserve below the legal limit of itself renders a bank unsafe and unsound is fallacious. If the jury considered that maintaining a reserve below twelve per cent. of itself rendered a bank unsafe and unsound and answered the question affirmatively upon that basis, it necessarily followed that they must answer the next question in the affirmative, (c) "Was Fristad aware of said unsafe and unsound condition of the bank?" for he admittedly knew that the reserve was below the required amount. At first blush it would seem that the findings of Fristad's knowledge that the bank was unsafe and unsound and of his freedom from fraud and dishonesty are inconsistent and require a new trial rather than judgment of dismissal. But as the latter finding goes directly to the specific and precise coverage of the bond, we conclude that due regard to the province and the finding of a jury, and the rule that every reasonable intendment must be given in support of a jury's finding, requires us to take the latter course.

(2) (3) The only claim of respondent respecting wilful misapplication of funds is that Fristad wilfully deferred paying the plaintiff's bills in order to keep up the bank reserve. The items of loss laid in the claim against the surety company on this account are: a claim dated September 3, $11.90; one dated September 24, $81.60; one dated June 7, $19.95; one dated September 21, $108.23; and one of $200, undated, a check in payment of which had not cleared when the bank closed. The jury found $201.73 was thus misapplied. The amount is evidently made up of the first, second, and fourth of the above items. During his six years' service as treasurer Fristad had habitually delayed the payment of bills although it was at times done because the plaintiff's bank account was low. He expressly denied deferring payments to avoid reducing the bank's surplus. Had Fristad, knowing the bank to be unsafe, delayed payment of

the bills for the purpose of keeping more money in the reserve, this would have been keeping the plaintiff's money in the bank with fraudulent and dishonest purpose. The jury expressly found that he did not "by any acts of fraud and dishonesty keep the deposits" of plaintiff in the bank after July 23, 1929. This finding relates back to the question of misapplication of funds, as there could be no wilful misapplication of funds as claimed without a dishonest and fraudulent keeping of the funds on deposit. Moreover, the finding of the jury as to misapplication of funds is deprived of force to which it might otherwise be entitled on the face of it had the court properly instructed as to the meaning of the term "wilful misapplication," of which instruction (3) the appellants complain. The instruction was:

"If you find, by a preponderance of all the credible evidence in the case, that these bills were handed to or came into the possession of the defendant Fristad, and that he failed to, within a reasonable time, for any reason, pay these bills, and it was his intention to make a wilful misapplication of these funds, then your answer to this question should be 'Yes.'

"If you are convinced by a preponderance of all the credible evidence in the case, to a reasonable certainty, that there was a misapplication of the funds and these bills were not paid purposely, then your answer to this question should be the amount of such bills as you find that he did not pay for such reason."

There is in this no definition 'of the meaning of the term "wilful misapplication," and no intimation that the term as used in the bond and in the question submitted necessarily implies a conscious breach of trust. *Van Siclen v. Bartol,* 95 Fed. 793, 798. The term implies not only doing or omitting to do an act knowingly, but a determination with evil intent to do or to omit doing it. *Felton v. U. S.* 96 U. S. 699. But we need not go beyond our own decisions for a definition of the term. While to constitute a wilful

misapplication of funds under the terms of the bond the act of misapplication need not necessarily constitute a crime, our definitions given in defining the word "wilful" in criminal statutes are applicable. The word implies not only a purpose to do the act, but a purpose to do wrong; it involves an evil intent. *Brown v. State,* 137 Wis. 543, 549, 119 N. W. 338; *In re Carlson,* 176 Wis. 538, 545, 186 N. W. 722; *State v. Preston,* 34 Wis. 675. The word may not inappropriately be defined as in distinguishing gross from ordinary negligence, which has been done with approval of the court in this language:

"By the word 'wilful' . . . is meant intentionally or knowingly doing an act under circumstances such that a man of reasonable knowledge and ability must know the doing of it to be contrary to his duty. It includes not only doing the act purposely, but doing it with wrongful purpose, and involves evil intent." *Barlow v. Foster,* 149 Wis. 613, 625, 136 N. W. 822. [The quotation is from the trial court's charge to the jury, taken from the printed "Case."]

The fault in the instruction might perhaps be overlooked in absence of a request to define the term were it not for the return of the jury into court with particular request for instruction "as to the meaning of the word 'wilful.' " The trial judge then instructed as follows:

"The words 'wilful' or 'wilfully' are . . . frequently used in the sense of intentionally, or in other words as implying a purpose or design, or proceeding from a conscious motion of the will as distinguished from accidentally or involuntarily; and they are accordingly used in the sense of or as equivalent to willingly, designedly; purposely, obstinately, stubbornly; inflexibly; perversely; voluntarily, deliberately, with set purpose, being governed by the will; without regard to reason, or without yielding to reason."

The greater part of this instruction is entirely beside the point and there is no intimation that there must be not only a purpose or intent to defer payment of the bills but a defer-

ring of payment with a wrongful purpose and evil intent, which is the essential idea of a definition of the word as it is used in the coverage clause of the bond and in the question submitted. The definition given leaves the jury to infer that a mere deferring of payment of the bills done knowingly constituted a wilful misapplication of the funds. In view of this instruction and the finding that Fristad did not keep the deposit in the bank "by any act of fraud or dishonesty," we conclude that the finding of the jury as to misapplication of funds does not entitle the plaintiff to judgment for the amount found misapplied or require a new trial of the case.

(4) The trial judge in connection with the questions as to fraud and dishonesty of Fristad instructed the jury that the burden was on the plaintiff to satisfy the jury of the affirmative to a reasonable certainty by a preponderance of the evidence. Appellants claim that the burden was to satisfy beyond a reasonable doubt. This is not correct, but the rule has many times been stated that in civil cases involving fraudulent or criminal acts the burden is on the party on whom the burden rests to establish them to satisfy the jury of their commission by "a clear and satisfactory preponderance of the evidence." *Bowe v. Gage,* 127 Wis. 245, 106 N. W. 1074; *Bursack v. Davis,* 199 Wis. 115, 121, 225 N. W. 738. The failure of the learned trial judge to give the correct instruction in this respect was doubtless due to inadvertence. That he is not the first trial judge to fall into the error, reference to the cases next above cited will demonstrate.

*By the Court.*—The judgment of the circuit court is reversed, with instructions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on June 20, 1932.