Vincent J. Zapalski, and Marie B. Zapalski, Appellees, v. Underwriters at Lloyd's, London (not Incorporated), and Chicago Metropolitan Home Builders Association, Appellants.

Gen. No. 46,631.

First District, Third Division.
February 23, 1956.
Rehearing denied March 21, 1956.
Released for publication March 29, 1956.

 

Lord, Bissell & Brook, of Chicago, for appellants; Stephen A. Milwid, and Wilbur S. Legg, both of Chicago, of counsel.

Maxfield Weisbrod, and Roland Towle, both of Chicago, for appellees.

JUDGE KILEY delivered the opinion of the court.
We have granted a rehearing in this cause to give further consideration to the issues on appeal.

This is an action seeking recovery of $7,000 in Count I, of the complaint, against defendant Association for failure to sue defendant Underwriters upon an Honesty Bond under which plaintiffs claim benefits; and in Count II upon the bond against the Underwriters. Defendants filed a joint answer and special affirmative defenses relying upon the provisions of the bond to preclude liability. Plaintiffs' motion to strike parts of defendants' pleadings was sustained. Defendants stood upon their pleadings and the court entered judgment for $5,902.91, the sum stipulated to be correct if the court's ruling was right.

During the year March 1, 1952 to March 1, 1953 defendant Association was covered by a bond of Underwriters at Lloyd's under which it was insured against misapplication of moneys by its member contractors. Plaintiffs in 1952 were owners of real estate in Homewood, Illinois. On January 21, 1952 they made a contract with one Wenger for the building of a residence on the property at the cost of $14,300. On that date they paid Wenger $100 and about March 21, 1952,

an additional $6,900. Wenger became a member of the Association about April 16, 1952. About October 8, 1952 plaintiffs learned that Wenger had abandoned the partially constructed improvement and had not applied the $7,000 they paid him, to the cost of the construction, labor and materials. They were required to expend $5,902.91 more than the contract figure in paying bills, discharging liens and in completing the house.

Plaintiffs reported Wenger's misapplication to the Association and it gave notice to, and filed proof of plaintiffs' loss with, Underwriters at Lloyd's. Subsequently, on demand the Association refused to sue Underwriters for plaintiffs' benefit. This action followed.

The principal question is whether the bond covered the misapplication by Wenger. Plaintiffs' motion to strike defendants' pleadings posed the question of law whether the pleadings showed that Wenger's misapplication occurred before or after he became a "member" of the defendant Association, so as to bring the loss within the terms of the Honesty Bond.

The pertinent parts of the bond are (as rearranged by us for convenience) :

"The Underwriters . . . agree to pay to . . . [the] Association . . . for the benefit of depositors or payors of . . . such amount . . . as may be deposited with or paid to any Member [Sec. 3] . . . .

Section 2, Loss is covered under this bond only (a) if sustained through any act or acts committed by any Member while this bond is in force as to such Member. . . ."

The pertinent facts of the stricken pleadings, taken as true on this appeal, are that Wenger deposited in a bank the $7,000 paid him by plaintiffs and that prior to April 16, 1952 he withdrew and applied to his own use all but $13.50 of that deposit. Because the money

313

was given Wenger before he became a member on April 16, 1952 defendants argue that the amount of the loss, except for $13.50 which remained on deposit after he became a member, was not covered by the bond. They say the intention of the makers of the bond was not to protect people dealing with "competing nonmembers" as Wenger was prior to April 16, 1952.

■ ■ The defenses are to be construed most strongly against defendants until a verdict on the merits. Sargent Co. v. Baublis, 215 Ill. 428, 430; Wright v. Federal Wrecking Co., 331 Ill. App. 231, 238. Under this rule we think the special defenses do not show nonliability of defendants. The defense shows merely that the money "deposited with or paid to" Wenger was deposited by him in a bank and all but $13.50 withdrawn for his own purpose by April 16, 1952 when he became a member. The defense does not show that he did not have $7,000 in funds elsewhere with which to perform his contract obligations. So far as disclosed Wenger may have withdrawn the funds and placed them on deposit in another bank. Or he may have had similar contracts and used the $7,000 he deposited to finance other work, depending on money from the other work to be paid to him in time to finance plaintiffs' project. Or he may merely have withdrawn the money and put it into a safe deposit box.

In this view we cannot agree with defendants' contention that plaintiffs' relation with Wenger was with a competing nonmember. So far as the pleadings show Wenger still had plaintiffs' money when he became a member.

■ The next question is the meaning of the term "deposited with or paid to any member." Defendants claim this means the act of depositing or paying, i. e., the act of plaintiffs in giving the money to Wenger. Presumably the trial court construed the term "may be deposited with" to mean "may be on deposit with."

314

This, we think, was a reasonable construction. There is no need to determine whether a strict or liberal rule of construction should be applied. In common usage the terms "deposited with" and "on deposit with" are used interchangeably in referring for instance to money in a bank.

There is no persuasive reason advanced in this court why the trial court should have adopted the construction for which defendants contend. The term is ambiguous and the construction adopted is consistent with the express and implied intention of the parties to the contract, gleaned from a fair reading of the instrument. The express intention of the parties was to indemnify depositors of earnest money who suffered a pecuniary loss through the misapplication of funds by a member. Underlying this indemnity was a benefit extended for the purpose of assuring honest treatment to those whose money was misused by members. This served to enhance the reputation and prestige of the Association.

We think it is reasonable to presume that the Association must have foreseen situations like the instant one, in which contractors would become members while they had on deposit money of others. Its reputation and prestige would suffer should dishonesty occur in these cases as it would in those which defendants now contend were the only ones within the intention of the parties. We think that the trial court did not err in construing the bond as it did. The term under discussion therefore can mean that the money was "deposited with," in the sense of "on deposit with," Wenger when he became a member April 16, 1952.

It will be noted moreover that Section 2 does not limit losses covered to moneys accepted by a member while a member. Neither does the statement of the agreement in the first sentence of the bond clearly limit the losses covered in Section 2 to moneys which

315

a member accepted after becoming a member. This is a further instance where defendants could have clearly limited the coverage to correspond with their present contention by the use of appropriate language.

█ Defendants also argue that the coverage under the bond is limited to "wrongful misapplication" after Wenger became a member and is consequently limited to $13.50. We have concluded that even had Wenger withdrawn all $7,000 of the funds turned over to him before he became a member, there need not have been a wrongful misapplication at that time for that reason alone. Even if we assume that Wenger had used the money withdrawn for his own purposes, so far as shown there may have been ample funds of Wenger on deposit elsewhere on April 16, 1952 which he intended to apply to plaintiffs' contract purposes. The wrongful misapplication in that event would occur when that intention was replaced by the intention not to pay the bills and thus come within the "Loss" provision of Section 2 of the policy. Here again we construe the defense against the defendants. The hypothetical event we have posed comes within the meaning given the term "wilful misapplication" in Humbird Cheese Co. v. Fristad, 208 Wis. 283, 242 N. W. 158, cited by defendants.

For the reasons given we are of the opinion that plaintiffs were depositors of money with Wenger, a member of the Association, and suffered a loss through an act of a member while the bond was in force as to that member and accordingly came within the class covered by the bond. We conclude that the court ruled properly on plaintiffs' motion and the judgment is affirmed.

Judgment affirmed.

LEWE, P. J. and FEINBERG, J., concur.

LEWE, P. J., took no part in the rehearing.