CENTURY SHOPPING CENTER FUND I, a Limited Partnership, by its General partner, Century Mgmt. Grp, and Century Management Group, Ltd., a Wisconsin Corporation, Plaintiffs-Appellants,

v.

Frank P. CRIVELLO, Joseph A. Crivello, Crivello Properties, a General Partnership, and Crivello Investments, a Sole Proprietorship, Defendants,

GODFREY COMPANY, INC., a Wisconsin Corporation, Defendant-Respondent. †

Court of Appeals

*No. 89-0901. Submitted on briefs February 7, 1990.—Decided April 3, 1990.*

(Also reported in 456 N.W.2d 858.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William J. French, William J. Domina,* and *Clay R. Williams* of *Gibbs, Roper, Loots and Williams* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Randall L. Nash* and *William J. Hammett* of *O'Neil, Cannon & Hollman, S.C.* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Century Shopping Center Fund I owns, and Century Management Group, Ltd., manages, the Howell Plaza Shopping Center on South Howell Avenue in Oak Creek, Wisconsin. They appeal the trial court's dismissal of their first amended complaint against the Godfrey Company, Inc. Century seeks damages arising out of Godfrey's alleged breach of its lease to operate a retail food market in Howell Plaza. Godfrey relocated its Sentry Food Store from Howell Plaza to a shopping center across the street on South Howell Avenue, owned

and operated by the Crivello defendants. The trial court held that Century's amended complaint failed as a matter of law to allege sufficient facts, which, if true, would establish Godfrey's breach of its lease. We reverse.

## I.

A complaint may not be dismissed for failure to state a claim unless, accepting the facts alleged in the complaint as true, it "appears to a certainty that no relief can be granted." *Quesenberry v. Milwaukee County,* 106 Wis. 2d 685, 690, 317 N.W.2d 468, 471 (1982). Thus, for the purposes of this appeal, we must accept the following allegations in Century's amended complaint as if they were proven.

In July of 1963, Godfrey entered into a lease with Century Shopping Center Fund's predecessor. Under the lease, which has been amended several times, Godfrey's Sentry Food Store is to be Howell Plaza's anchor tenant until September 1, 1993. The lease provides that the area rented by Godfrey "shall be used as a retail food market and allied operation," and prohibits Century from permitting the Howell Plaza property to be used by a competing retail food store until tenants occupy 250,000 square feet of rentable area in the shopping center, unless Godfrey agrees. Godfrey may not assign the lease "in any way," but may sublet its area "in whole or in part," with Century's written consent, which "shall not be unreasonably withheld."

The amended complaint describes the importance to Century of Godfrey's anchor-tenant lease:

> The economic viability of a shopping center such as Howell Plaza is dependent upon the presence of a grocery store as an anchor tenant because of the

unique ability of grocery stores to attract a large number of customers who then utilize the services of all the stores in the shopping center.

Godfrey presently rents approximately forty-two percent of the leasable square footage at the shopping center, and pays "in excess of 40 percent" of the total gross rents.

Rent under the lease has two components: a basic rent, which the amended complaint alleges "was and continues to be substantially below the fair market rental the property could otherwise earn," and a percentage-of-gross-receipts component. The amended complaint asserts that "[i]t is only when the basic rental and the percentage rental are combined that the total rental approximates a fair market rental for the property."

In 1987, Century planned to expand and remodel Howell Plaza with financing that was partially contingent on Godfrey's agreement to further amend the lease. Century complains that "Godfrey intentionally drew out and protracted" its negotiations with Century until August of 1988 so it could secretly conspire with the Crivello defendants to move the Sentry Food Store to Crivello's competing shopping center across South Howell Avenue, about a quarter of a mile away.

Godfrey closed its Sentry Food Store at Howell Plaza in mid-November 1988, and, according to the amended complaint, posted the following signs in the store's windows:

> This store closed. Please shop at our new store across the street. Thank you. Sentry.
> Grand Opening New Sentry Store 8561 South Howell Ave. Saturday Nov. 19, 8am.

(Underlining and punctuation as in amended complaint.) The amended complaint charges that although the Sentry Food Store at Howell Plaza has been main-

231

tained "without illumination and in a disheveled and unattractive condition," Godfrey has attempted to retain its leasehold, paying only the base rent, "in order to exclude competition with its new store" in the Crivello shopping center, and that this was the goal of Godfrey's conspiracy with the Crivello defendants. Century also contends that a Godfrey representative told the mayor of Oak Creek that Godfrey was not going to put a food store in Howell Plaza, but was going to "rent it for some other use."

Century asserts three claims against Godfrey: breach of the lease, abandonment, and conspiracy with the Crivello defendants to maliciously injure Century's business, in violation of sec. 134.01, Stats. As noted, the trial court dismissed these claims, and Century appeals.[1]

---

[1]The "wherefore" clause in Century's amended complaint seeks "[p]ossession of the leasehold currently held by Godfrey at Howell Plaza pursuant to Chapter 843, Wis. Stats. and terminati[on of] Godfrey's leasehold interest including but not limited to any and all restrictions on the use of the premises by Century Fund or a new lessor." The trial court's decision and order did not address this wrongful-detention issue, and Century's brief mentions it only in passing, in connection with its argument that Godfrey has abandoned its leasehold. Since we have determined that the amended complaint does not state a claim for abandonment, *infra,* part II B, and because Century's appellate brief does not otherwise argue the applicability of ch. 843, we do not discuss this issue. *See In Matter of Estate of Balkus,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985).

Century also sought damages from the Crivello defendants, and asserted claims based on tortious interference with contract and defamation, as well as the alleged violation of sec. 134.01, Stats. The trial court dismissed all of Century's claims against the Crivello defendants, except the claim for defamation. Century may not, therefore, appeal as of right the Crivello portion of the trial

232

## II.

### A. Breach of the Lease

Whether Century's amended complaint states a claim against Godfrey for breach of their lease turns on whether the lease permits Godfrey to close its retail food store operation in Howell Plaza, move it to a nearby and competing shopping center, continue to pay the base rent at Howell Plaza, and either keep the Howell Plaza premises vacant or put in a non-food store operation. We hold that the lease does not.

Leases share the qualities of both contracts and conveyances, and are interpreted as are other agreements unless there is a conflict with principles of property law. 3 G. Thompson, *Real Property* sec. 1052 (J. Grimes 1980 repl. vol.); 6 S. Williston, *Contracts* secs. 890–890A (W. Jaeger 3d ed. 1962). Although courts generally may not imply covenants in leases whose terms exceed one year, secs. 706.01(1), (2), and 706.10(6), Stats.,[2] an unambigu-

---

court's order of dismissal, *see* sec. 808.03(1), Stats. (An appeal as of right lies from judgment or order that "disposes of the entire matter in litigation as to one or more of the parties."), and those matters are not presently before us.

[2]Section 706.01(1) and (2), Stats., provides, as material to our discussion:

> **Scope, definitions, construction.** **(1)** Subject to the exclusions in sub. (2), this chapter shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity.
>
> **(2)** Excluded from the operation of this chapter are transactions which an interest in land is affected:
>
> . . ..
>
> (c) By lease for a term limited to one year or less . . ..

ous lease that is not against clear public policy must be enforced as it stands, 3 G. Thompson, *supra,* sec. 1052 at 190; *see* 6 S. Williston, *supra,* sec. 890A; *Pelikan v. Spheeris,* 252 Wis. 562, 564-567, 32 N.W.2d 220, 221-223 (1948). *Cf. Mullen v. Coolong,* 132 Wis. 2d 440, 454, 393 N.W.2d 110, 116 (Ct. App. 1986) ("A contractual provision voluntarily made between competent parties is valid and enforceable unless it violates a statute, rule of law, or public policy."), *overruled on other grounds, Nicholson v. Home Ins. Cos.,* 137 Wis. 2d 581, 600, 405 N.W.2d 327, 334-335 (1987).

The lease between Godfrey and Century is unambiguous: "The premises shall be used as a retail food market and allied operation" during the lease term, that is until September 1, 1993. Godfrey argues, and the trial court agreed, however, that under *Rapids Associates v. Shopko Stores, Inc.,* 96 Wis. 2d 516, 292 N.W.2d 668 (Ct. App. 1980), this phrase is permissive, and merely describes—rather than dictates—Godfrey's use of the property. Although the facts of *Rapids Associates* are superficially similar to the circumstances here, the case is inapposite.

Rapids Associates built a store according to Shopko's specifications, and leased the store to Shopko under a twenty-year lease with a dual-component rent: a base rent and an additional amount computed as a percentage of gross sales. *Id.,* 96 Wis. 2d at 517, 292 N.W.2d at 670. The lease, in a paragraph describing the property headed "PREMISES LEASED," Brief for Appellant-

---

Section 706.10(6), Stats., in part provides:

> Except as provided in sub. (7) and except as otherwise provided by law, no warranty or covenant shall be implied in any conveyance, whether or not such conveyance contains special warranties or covenants.

Shopko Stores, Inc. at app. 101 (No. 79–1591) (capitalization and underlining in original), recited that Shopko was renting the property " 'for the purpose of conducting thereon a retail department store . . ..' " *Rapids Assocs.,* 96 Wis. 2d at 518, 292 N.W.2d at 670. The lease permitted Shopko to sublet the store for any lawful purpose as long as that did not create a greater hazard than Shopko's operation. *Id.,* 96 Wis. 2d at 520, 292 N.W.2d at 671.

About halfway into the lease term, Shopko built a new facility, and wanted to sublet the Rapids Associates' store. *Id.,* 96 Wis. 2d at 517, 292 N.W.2d at 670. Rapids Associates objected and argued that the rent-as-a-percentage-of-sales clause, and the provision prohibiting abandonment of the premises, required that the lease be construed as containing either an implied covenant of continuous operation or an implied covenant restricting Shopko's use of the property. *Id.,* 96 Wis. 2d at 518–520, 292 N.W.2d at 670–671. Rapids Associates sought to enjoin the building's use for anything other than a retail department store. *Id.,* 96 Wis. 2d at 517, 292 N.W.2d at 670.

The trial court granted summary judgment to Rapids Associates. *Ibid.* We reversed. First, in light of the lease clause specifically permitting Shopko to sublet the property for any purpose, we held that the clause describing the property as being "for the purpose of conducting thereon a retail department store" merely denoted Shopko's "intended use of the premises." *Id.,* 96 Wis. 2d at 518, 292 N.W.2d at 670.[3] Second, we rejected

---

[3]*See also Forman v. United States,* 767 F.2d 875 (Fed. Cir. 1985), which relied, in part, on *Rapids Associates. Forman* held that in light of, among other things, the unlimited right to sublet, a lease clause noting that "[l]essor hereby leases to the Government the following described premises . . . to be used for postal

Rapids Associates' attempt to have us imply a covenant restricting the property's use because the Rapids Associates/Shopko lease was a conveyance under sec. 235.50, Stats. (1969), and sec. 235.02, Stats. (1969) prohibited covenants by implication.[4]

██

The lease here is significantly different from the one in *Rapids Associates.* First, as already seen, the Century/Godfrey lease specifically provides that: "The premises *shall be used* as a retail food market and allied operation." (Emphasis added.) This clause, unlike the descriptive phrase in the Rapids Associates/Shopko lease, is not buried in a paragraph defining the property. Rather, it stands alone in an article of the lease entitled "USE." (Capitalization and underlining in original.) Second, also unlike the situation in *Rapids Associates,* Century bound itself not to permit a competing retail food store at the Howell Plaza property until a certain minimum area of the shopping center was rented. Third, also

purposes," *id.,* 767 F.2d at 877, was "permissive and not restrictive," *id.,* 767 F.2d at 880, and merely established "that the landlord is aware of and sanctions the tenant's intended use," *ibid.*

[4]Section 235.50, Stats. (1969), provided:

> **"Conveyance" and "purchaser" defined.** The term "conveyance," as used in this chapter, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned or by which the title to any real estate may be affected in law or equity, except wills and leases for a term not exceeding three years . . ..

Section 235.02, Stats. (1969), provided:

> **No covenants implied.** No covenant shall be implied in any conveyance of real estate whether such conveyance contain special covenants or not . . ..

These provisions now appear, in amended form, at secs. 706.01(1), (2), and 706.10(6), Stats. (1987–88).

unlike the situation in *Rapids Associates,* Godfrey's right to sublet is subject to Century's consent. These are all conditions to which both parties agreed and to which both are bound. Since the amended complaint alleges that Godfrey has left the property vacant with either the intention of keeping it vacant or subletting it for a use other than "as a retail food market and allied operation," the amended complaint states a claim for breach of the lease.[5] The trial court's order dismissing that claim is reversed.

## B. Abandonment

A tenant does not abandon leased premises unless the tenant, with the "intent to abandon" does something, or fails to do something, that results in an "absolute relinquishment" of the premises. *Sporleder v. Gonis,* 68 Wis. 2d 554, 557, 229 N.W.2d 602, 603–604 (1975) (quoting *Tuschoff v. Westover,* 395 P.2d 630, 632 (Wash. 1964)).

The amended complaint does not allege facts that, if true, would constitute abandonment. To the contrary, the factual allegations forcefully support Century's position that Godfrey is attempting to retain its dominion over the property to forestall competition with the Sentry Food Store it recently opened in the Crivello shopping center. That is not abandonment. The trial court's order dismissing the abandonment claim is affirmed.

---

[5]We express no view whether a good-faith inability to comply with the provision would constitute a breach. *See Restatement (Second) of Contracts* ch. 11 (1979).

## C. Tortious Injury to Business

Section 134.01, Stats., provides civil redress for any person suffering damages as the result of concerted action undertaken "for the purpose of wilfully *or* maliciously injuring" that person's business.[6] (Emphasis added.) Thus, the injury-to-business aspect of sec. 134.01 is satisfied by proof that the concerted action was either "wilful" or "malicious."[7]

■

A person "wilfully" does something that is prohibited when he or she acts volitionally and with intent to accomplish the unlawful result. *Aikens v. Wisconsin,* 195 U.S. 194, 202 (1904). *Cf. Humbird Cheese Co. v. Fristad,* 208 Wis. 283, 289–290, 242 N.W. 158, 161 (1932) (claim under sec. 134.01, Stats., not asserted). On the other hand, the word "maliciously," as it is used in sec. 134.01,

---

[6]Section 134.01, Stats., provides in full:

**Injury to business; restraint of will.** Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of wilfully or maliciously injuring another in his reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500.

It was first enacted in 1887, and although it has been renumbered twice, it has never been amended. *Maleki v. Fine-Lando Clinic Chartered, S.C.,* 154 Wis. 2d 471, 480 & n.7, 453 N.W.2d 208, 211 & n.7 (Ct. App. 1990).

[7]By contrast, the portion of sec. 134.01 that prohibits "compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act" requires that the concerted action be undertaken with a malicious purpose—mere wilfulness is not sufficient.

requires that the " 'wrongful act' [be] done with the malevolent desire to invade the 'right' of another." *Maleki v. Fine-Lando Clinic Chartered, S.C.,* 154 Wis. 2d 471, 481–482, 453 N.W.2d 208, 212 (Ct. App. 1990) (quoting and citing *State ex rel. Durner v. Huegin,* 110 Wis. 189, 259–263, 85 N.W. 1046, 1065–1067 (1901) and *Aikens,* 195 U.S. at 206). The wrongful act must therefore be done "for the sake of the harm as an end in itself, and not merely as a means to some further end legitimately desired." *Aikens,* 195 U.S. at 203. Whether the concerted action is done "wilfully" or "maliciously," however, sec. 134.01 is not violated unless a legal right has been invaded. *See Maleki,* 154 Wis. 2d at 481–486, 453 N.W.2d at 212–214.

■

There are sufficient factual allegations in Century's amended complaint that, if true, would support a finding that Godfrey and Crivello acted in concert to intentionally invade Century's rights under the lease. Century's amended complaint thus sufficiently alleges that Godfrey and the Crivello defendants agreed for the purpose of "wilfully" injuring Century in its business, and therefore states a claim under the first prong of sec. 134.01 even though there are no factual allegations that would support a finding that Godfrey and the Crivello defendants were motivated by anything other than economic self-interest.[8] Accordingly, the trial court's order dismissing the claim under sec. 134.01 is reversed.

---

[8]We thus need not decide whether the "malevolence" component of "malicious" requires that the malevolent intent be the defendants' only motive, or whether liability may flow from conduct that, though essentially motivated by economic self-interest, is tinged with malevolence. *See Maleki,* 154 Wis. 2d at 482 n.9, 453 N.W.2d at 212 n.9.

*By the Court.*—Order reversed in part, affirmed in part, and remanded.